IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAILA DILLON, an individual,                    Case No. 3:24-cv-01187-SB

                    Plaintiff,                    **OPINION AND ORDER**

         v.

LEGACY HEALTH, a corporation,

                    Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

        Plaintiff Kaila Dillon ("Dillon") filed this action against her former employer, Defendant

Legacy Health ("Legacy"), alleging that Legacy violated Title VII of the Civil Rights Act ("Title

VII") by failing to accommodate her religious beliefs.[1] Dillon now moves under Federal Rule of

Civil Procedure ("Rule") 15(a) for leave to amend to add a disability discrimination claim under

Title I of the Americans with Disabilities Act ("ADA"). The Court has jurisdiction under 28

_____

        [1] Dillon agreed to dismiss her failure to accommodate claim under Oregon Revised
Statutes ("ORS") § 659A.030. (*See* Pl.'s Proposed Second Am. Compl. ("Second Am. Compl.")
at 8-10, ECF No. 11-1, proposing to strike this state law claim; *cf.* First Am. Compl. ¶¶ 21-27,
ECF No. 9.)

U.S.C. § 1331. For the reasons explained below, the Court grants Dillon's motion for leave to amend.[2]

## BACKGROUND

"The following factual allegations are taken from [Dillon's] proposed second amended complaint and the record[.]" *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 568 (9th Cir. 2019). In evaluating Dillon's motion for "leave to amend, the allegations in the complaint 'are taken as true and construed in the light most favorable' to [Dillon.]" *Id.* (quoting *Gordon v. City of Oakland*, 627 F.3d 1092, 1095 (9th Cir. 2010)); *see also Gordon*, 627 F.3d at 1093, 1095 (reviewing a partial denial of a motion for leave to amend and thus "[a]ll allegations of material fact made in the complaint [were] taken as true and construed in the light most favorable to the plaintiff").

Dillon worked as a computed tomography ("CT") scan technologist at Legacy, an Oregon corporation, for over five years. (Second Am. Compl. ¶¶ 1, 4, 14, 17; Def.'s Corp. Disclosure Statement at 1, ECF No. 7.) Dillon served in this capacity at Legacy Emmanuel and Silverton

---

[2] Not all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c), but magistrate judges have authority to grant motions for leave to amend because such a disposition is considered non-dispositive. *See Lovato v. Delta Hosp. Grp.*, No. 3:22-cv-00264-SB, 2023 WL 1815649, at *5 n.5 (D. Or. Feb. 8, 2023) ("Generally, a motion for leave to amend the pleadings is a nondispositive matter that may be ruled on by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1).' . . . '[A] magistrate judge's decision to grant a motion to amend is not generally dispositive[.]" (first quoting *Cazares v. Morris*, No. 09-cv-02168, 2011 WL 2414543, at *2 (D. Ariz. June 16, 2011); and then quoting *Bastidas v. Chappell*, 791 F.3d 1155, 1164 (9th Cir. 2015))); *see also Bastidas*, 791 F.3d at 1164 ("It should be no surprise that the magistrate judge's decision to *grant* a motion to amend is not generally dispositive; whether the denial of a motion to amend is dispositive is a different question entirely."); *Gandara v. Newsom*, No. 22-55214, 2023 WL 2207112, at *1 (9th Cir. Feb. 24, 2023) (holding that the "magistrate judge acted within her authority in dismissing [the plaintiff's] complaint with leave to amend," which is a non-dispositive matter); *cf. NMS 1539, LLC v. City of Santa Monica*, No. 2:20-cv-11318, 2022 WL 3575311, at * 2 (C.D. Cal. July 26, 2022) (noting that even if the district court granted the defendant's motion to dismiss, it was required to "liberally" grant leave to amend under Rule 15(a)(2) and granting leave meant that the motion to dismiss "would not be dispositive") (simplified).

Medical Centers, and Dillon's duties consisted primarily of escorting patients, including those suffering from COVID-19 symptoms, to and from the imaging department. (Second Am. Compl. ¶ 14.)

As a life-long "practicing Christian," Dillon "relies heavily on Christ," "believes that her body is a temple of the Holy Spirit and the highest power of Jesus Christ," and "believes that He has kept her strong and healthy, so that she could fight on the frontlines of the pandemic against COVID-19." (*Id.* ¶ 15.) Dillon also suffers from Von Willebrand's disease, experienced an "adverse reaction to one of the ingredients in the vaccines," and reviewed "available literature and discovered a warning about the vaccines for individuals with bleeding disorders[.]"[3] (*Id.* ¶ 16.)

In response to the COVID-19 pandemic, Legacy announced in the summer of 2021 that unless it granted an employee's request for a medical or religious exemption, all employees would be required to receive the COVID-19 vaccine as a condition of their employment. (*Id.* ¶¶ 4-5, 16.) Dillon and other staff members from Legacy Silverton Medical Center's imaging department, however, also received an "email from management stating that Legacy would not terminate staff if they were not vaccinated, [and] would find other ways to keep them safe[.]" (*Id.* ¶ 16.)

In August 2021, Dillon applied for both religious and medical exemptions from Legacy's vaccine mandate. (*Id.*) Dillon submitted a letter in support of her religious exemption request, in which she explained to Legacy that (1) "although she believes in science, she believes more in the Higher Power of Jesus Christ, as He guides her through her life," (2) "she had come to terms

---

[3] "Von Willebrand's disease is a hereditary bleeding disorder that adversely affects clotting." *Allen v. Berryhill*, No. 3:16-cv-02067-SB, 2017 WL 5297945, at *1 n.1 (D. Or. Nov. 13, 2017) (quoting *Hawke-Dingman v. Comm'r of Soc. Sec.*, No. 11-cv-15493, 2012 WL 5328674, at *2 (E.D. Mich. Sept. 11, 2012)).

PAGE 3 – OPINION AND ORDER

with her body . . . [and] medical history and did not trust that the COVID vaccines would be appropriate for her [to take], her religious beliefs[,] or her medical issues," (3) she views her "body [as] a temple from Christ and the only body [she] get[s] while doing Christ's work here on earth," and (4) consistent with her beliefs, 1 Corinthians 6:19-20 asks, "Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God?" (*Id.*)

Dillon submitted a letter from her doctor in support of her medical exemption request. (*Id.*) She also reviewed the Centers for Disease Control and Prevention's ("CDC") website and discovered that the "vaccines had contraindications for people who had bleeding disorders" like Von Willebrand's disease and a CDC statement advising that "there had not been enough trials and research on specific disorders to ensure [the vaccines'] safety for patients with bleeding disorders." (*Id.*)

Legacy denied Dillon's requests for religious and medical exemptions to its vaccine mandate, "summarily placed [Dillon] on unpaid leave[,] and then terminated [Dillon.]" (*Id.* ¶¶ 16-17, 31.) Following her termination, Dillon filed a charge with the Equal Employment Opportunity Commission ("EEOC") and received a ninety-day right-to-sue notice on April 22, 2024. (*Id.* ¶ 2.)

On July 19, 2024, Dillon filed this lawsuit against Legacy in Oregon federal court. (Compl. at 1-14, ECF No. 1.) Dillon served Legacy with the summons and complaint on October 3, 2024, making Legacy's responsive pleading due by October 24, 2024. (ECF No. 5); *see also* FED. R. CIV. P. 12(a)(1)(A)(i)-(ii) (explaining that "[u]nless another time is specified by a federal statute," or the defendant "has timely waived service under Rule 4(d)," the "defendant must

serve an answer . . . within [twenty-one] days after being served with the summons and complaint").

Instead of filing a responsive pleading, Legacy and Dillon filed a joint motion for an extension of time on October 24, 2024, in which they requested that the Court extend Dillon's amended pleading and Legacy's responsive pleading deadlines to November 7 and December 11, 2024, respectively. (Joint Mot. Extension Time at 1-2, ECF No. 6.) The parties also represented that an extension of time was necessary because they conferred the previous day in an "effort to avoid unnecessary motions practice and ensure the most efficient use of the Court's time," and Dillon "ha[d] agreed to file an [a]mended [c]omplaint and voluntarily dismiss several claims." (*Id.*; Decl. Melissa Healy Supp. Def.'s Resp. Pl.'s Mot. Leave Amend ("Healy Decl.") ¶ 2, ECF No. 20.)

During their hour-long video conferral, the parties "reviewed representative examples of improper pleadings in several pending matters and discussed exactly what content would need to be deleted because it pertained to claims and theories that were no longer part of the case." (Healy Decl. ¶ 2.) According to Legacy's counsel, Dillon's "counsel agreed to file an amended complaint in this case to voluntarily withdraw all claims except her failure to accommodate claims."[4] (*Id.*) Also on October 24, 2024, the Court entered an order granting the parties' joint

---

[4] The Court provides some brief context regarding the "claims" to which the parties refer. In both her initial complaint and first amended complaint, the latter of which the Court addresses further below, Dillon styled her two causes of action against Legacy as: (1) a claim for "unlawful employment discrimination based on religion in contravention of [ORS] § 659A.030," and (2) a claim for "unlawful discrimination in contravention of Title VII." (Compl. ¶¶ 20, 27; First Am. Compl. ¶¶ 21, 28) (simplified). In each of these complaints, Dillon's two claims are based primarily on Dillon's allegation that Legacy failed to accommodate her religious beliefs. (*See* Compl. ¶¶ 21-24 & 25(4); *id.* ¶¶ 28-31 & 32(4); First Am. Compl. ¶¶ 22-25 & 26(2); *id.* ¶¶ 29-32 & 33(2).) Dillon's complaints, however, also included a paragraph under each claim, in which Dillon alleged and provided a numbered list of "more specifically described" statutory violations and potential theories of liability. (Compl. ¶¶ 25, 32; First Am. Compl. ¶¶ 26, 33.) For example,

motion and setting amended and responsive pleading deadlines of November 7 and December 11, 2024. (ECF No. 8.)

Dillon timely filed a first amended complaint on November 7, 2024. (First Am. Compl. at 1-14.) In her first amended complaint, Dillon continued to assert religious discrimination claims under Title VII and ORS § 659A.030 and include factual allegations regarding both her religious and medical exemption requests, but she dropped three of the five theories upon which she previously relied. (*See* First Am. Compl. at 1, alleging that this "case centers around . . . unlawful religious or medical discrimination [that Dillon] suffered because of her conflict with taking the COVID-19 vaccine"; *id.* ¶¶ 7, 18, 26(1)-(2), 33(1)-(2), addressing Dillon's religious and medical exemption requests and Title VII and ORS § 659A.030 claims based on theories of "wrongful termination" and "failure to provide reasonable accommodation"; *cf.* Compl. at 1; *id.* ¶¶ 7, 18, 25(1)-(5), 32(1)-(5), alleging the same but also including theories based on "wrongful reduction in pay," "retaliation," and "company-wide, or systemic, discriminatory pattern or practice") (simplified).

On November 19, 2024, after Legacy's counsel conferred with Dillon's counsel about a forthcoming motion to show cause and impose sanctions in a different intradistrict case, Dillon's counsel emailed Legacy's counsel "a proposed revised amended complaint that eliminate[d] the additional allegations and objectionable sections." (Healy Decl. Ex. 1 at 1-18; *id.* ¶ 4.) Dillon's counsel's proposal struck Dillon's wrongful termination theory, leaving only Dillon's failure to

---

Dillon's initial complaint listed these five theories: (1) "wrongful termination," (2) "wrongful reduction in pay," (3) "retaliation," (4) "failure to provide reasonable accommodation" (i.e., the focus of the paragraphs preceding it), and (5) "company-wide, or systemic, discriminatory pattern or practice." (Compl. ¶¶ 25(1)-(5), 32(1)-(5); *see also* First Am. Compl. ¶¶ 26(1)-(2), 33(1)-(2), continuing only to allege and list the wrongful termination and failure to accommodate theories).

accommodate theory remaining under her claims and out of the five that she originally listed. (*Id.* Ex. 1 at 8-14.)

On December 5, 2024, Legacy's counsel responded to Dillon's counsel and explained that Dillon's proposed second amended complaint "still [did] not reflect the parties' agreement that [Dillon] would dismiss all claims other than the failure to accommodate claims." (*Id.* ¶ 5; *id.* Ex. 2 at 1.) By way of example, Legacy's counsel highlighted, among other things, Dillon's counsel's continued "reference to [Dillon's] purported inability to receive a COVID-19 vaccine for medical reasons and [Dillon's] medical exemption request, neither of which pertain[ed] to [Dillon's] failure to accommodate claim (or any of the dismissed claims, for that matter)." (*Id.* Ex. 2 at 1; *see also id.* Ex. 3 at 2, noting that on December 9, 2024, Legacy's counsel "flag[ged]" and reserved Legacy's right to assert "all arguments to dispute [Dillon's] entitlement to discovery concerning allegations that are not relevant to [her] remaining failure to accommodate claims").

On December 10, 2024, the Court entered an order granting the parties' request to reset the amended and responsive pleading deadlines to December 20, 2024 and January 3, 2025. (ECF No. 10.)

On December 17, 2024, Dillon's counsel emailed Legacy's counsel an updated version of Dillon's proposed second amended complaint, which continued to include Dillon's allegations regarding her medical exemption request. (Healy Decl. ¶ 7; *id.* Ex. 4 at 1-2, 4, 7-8.) On December 19, 2024, Legacy's counsel objected to Dillon's updated proposal and requested that Dillon's counsel strike the introduction's reference to "medical discrimination" and "problematic language" regarding Dillon's medical exemption request, which "ha[d] no bearing on her failure

to accommodate claim under Title VII." (*Id.* ¶ 8; *id.* Ex. 5 at 2-3.) Dillon's counsel responded that he would follow up in the "morning about the proposed changes[.]" (*Id.* Ex. 5 at 2.)

On December 20, 2024, just before 3:00 p.m., Dillon's counsel emailed Legacy's counsel a revised proposal and advised that in his view Dillon had "an ADA claim as well as [her] religious discrimination claim, so [he] intend[ed] to amend the complaint to assert that claim." (*Id.* ¶ 8; *id.* Ex. 5 at 1.) Shortly thereafter, Legacy's counsel responded that they were unable to agree to such a proposal because the parties had "never discussed any claims other than the failure to accommodate claim," and thus Dillon's counsel would "need to file a motion." (*Id.* Ex. 5 at 1; *see also id.* ¶ 10, declaring that before the December 20, 2024 email, Dillon's counsel had "never mentioned" to Legacy's counsel that Dillon "may bring a disability discrimination claim" under the ADA).

Later that same day, December 20, 2024, Dillon's counsel filed Dillon's pending motion for leave to amend her complaint to add a disability discrimination claim under the ADA. (ECF No. 11.) In mid-February 2025, after Legacy timely filed its response to Dillon's motion for leave to amend, Dillon's counsel belatedly sought an extension of time in which to file a reply in support of the pending motion. (ECF No. 21.) The Court denied this untimely request, noting that Dillon's counsel only sought an extension after the Court notified him of the missed deadline, and Dillon's counsel's explanation that he failed to calendar the deadline did not demonstrate good cause. (*Id.*) The Court, however, also advised that it planned to schedule oral argument on Dillon's motion, and Dillon's counsel could respond to Legacy's arguments at that time. (*Id.*)

On April 22, 2025, the Court held oral argument and took Dillon's motion under advisement.

**DISCUSSION**

Dillon moves for leave to amend her complaint to add a disability discrimination claim under the ADA. Dillon has also agreed voluntarily to dismiss her religious discrimination claim under ORS § 659A.030. Legacy opposes Dillon's motion and proposed addition of an ADA claim.

## I.    APPLICABLE LAW

Where a party cannot amend its pleading as a "matter of course" under Rule 15(a)(1), it "may amend its pleading only with the opposing party's written consent or the court's leave."[5] FED. R. CIV. P. 15(a)(2). "[Rule] 15(a)(2) provides that the district court should 'freely give leave when justice so requires.'" *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1160 (9th Cir. 2021) (quoting FED. R. CIV. P. 15(a)(2)). The Ninth Circuit has "previously 'stated that this policy is to be applied with extreme liberality.'" *Id.* (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)); *see also Brown v. Stores Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) ("Requests for leave to amend should be granted with 'extreme liberality.'" (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009))); *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) ("The standard for granting leave

---

[5] Dillon filed her motion for leave to amend within the time specified in the Court's case management order. (*See* ECF No. 10, granting the parties' joint request to "revise the case management schedule," and establishing an amended pleading deadline of December 20, 2024). Accordingly, the parties agree that the Court should apply Rule 15(a) in evaluating Dillon's motion for leave to amend, not Rule 16(b)'s "good cause" standard. (*See* Pl.'s Mot. Leave Amend ("Pl.'s Mot.") at 1-2, ECF No. 11, relying on the Rule 15(a) standard; Def.'s Resp. Pl.'s Mot. Leave Amend ("Def.'s Resp.") at 6-7, ECF No. 19, doing the same); *cf. Dhillon v. Princess Cruise Lines, Ltd.*, No. 22-55215, 2023 WL 5696529, at *2 (9th Cir. Sept. 5, 2023) ("[T]he district court committed an error of law when it applied Rule 16's 'good cause' standard to [the] [p]laintiffs' motion for leave to file a third amended complaint. . . . [T]he [district] court's scheduling order did not contain a deadline for amending the pleadings. Thus, the district court should have applied [Rule] 15(a) to [the] [p]laintiffs' motion for leave to file a third amended complaint.").

PAGE 9 – OPINION AND ORDER

to amend is generous." (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990))).

The Supreme Court has identified several factors that "a district court should consider in deciding whether to grant leave to amend[.]" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Specifically, the Supreme Court in *Foman* explained that a district "[c]ourt[] may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (brackets omitted) (quoting *Foman*, 371 U.S. at 182); *Brown*, 953 F.3d at 574 (identifying the same five-factor inquiry (citing *Foman*, 371 U.S. at 182)); *Corinthian Colls.*, 655 F.3d at 995 (doing the same (citing *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004))); *see also Herring*, 8 F.4th at 1161 (noting that "[i]n determining whether leave to amend is appropriate, the district court considers the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility" (quoting *Owens*, 244 F.3d at 712)).

## II.    ANALYSIS

The Court concludes that the *Foman* factors weigh in Dillon's favor. The Court therefore exercises its discretion to grant Dillon's motion under Rule 15(a) for leave to amend to add an ADA claim. *See Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117 (stating that "[c]ourts may decline to grant leave to amend only if there is strong evidence" of the *Foman* factors at issue); *Jensen v. Brown*, 131 F.4th 677, 701 (9th Cir. 2025) (reiterating that circuit precedent

requires Rule 15(a)'s "policy . . . to be applied with extreme liberality" (quoting *Owens*, 244 F.3d at 712)).

In its response to Dillon's motion, Legacy argues that two *Foman* factors (undue delay and prejudice) are present and "together[] [provide] sufficient bases to deny a request to amend." (Def.'s Resp. at 7, citing *Kittel v. Advantage Physical Therapy*, 843 F. App'x 53, 56 n.2 (9th Cir. 2021).) Legacy does not argue that Dillon's counsel has acted in bad faith or with a dilatory motive, or rely on the initial amendment that Dillon's counsel filed pursuant to the parties' joint motion.[6] (*See id.* at 7-10; Joint Mot. Extension Time at 1-2, representing that the parties conferred in "an effort to avoid unnecessary motions practice and ensure the most efficient use of the Court's time" and Dillon "agreed to file an [a]mended [c]omplaint and voluntarily dismiss several claims," and as a result, the parties, acting in "good faith and not for any improper purposes or to cause undue delay," sought extension of their amended and responsive pleading deadlines).

As framed and argued by Legacy, Dillon's motion for leave to amend turns on evidence of undue delay and prejudice. The Court agrees. *See Corinthian Colls.*, 655 F.3d at 995 ("Here, there is no evidence of delay, prejudice, bad faith, or previous amendments. Therefore, leave to amend turns on whether amendment would be futile."); *Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1118 (emphasizing that "there [was] no evidence or allegation of 'undue delay, bad

---

[6] During oral argument, Legacy's counsel invoked for the first time Dillon's filing of the amended complaint. The Court explains below why Dillon's amended complaint would not (and does not) change its conclusion that granting Dillon's motion for leave to amend is appropriate here. *See W.C. ex rel. Chang v. Rowland Unified Sch. Dist.*, 769 F. App'x 471, 472 (9th Cir. 2019) (holding that the "district court abused its discretion in denying [the plaintiff] leave to amend his complaint," and noting that the plaintiff had "already amended his complaint once [but that did] not amount to several opportunities to amend . . . and repeated fail[ures] to cure") (simplified).

faith or dilatory motive' over the course of the[] proceedings" (quoting *Foman*, 371 U.S. at 182)).

"Of the *Foman* factors, prejudice to the opposing party carries the most weight." *Brown*, 953 F.3d at 574 (citing *Eminence Cap., LLC*, 316 F.3d at 1052); *see also Eminence Cap., LLC*, 316 F.3d at 1052 (noting that "[p]rejudice is the touchstone of the inquiry under [R]ule 15(a)" and the "party opposing amendment bears the burden of showing prejudice") (simplified). In fact, the Ninth Circuit has "previously reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987)).

Furthermore, "[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend." *Id.* (citing *DCD Programs, Ltd.*, 833 F.2d at 186); *see also Reimer v. Snohomish Cnty. Fire Dist. No. 1*, 853 F. App'x 59, 61-62 (9th Cir. 2021) ("It is well established . . . that '[d]elay alone does not provide sufficient grounds for denying leave to amend.'" (quoting *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus.*, 648 F.2d 1252, 1254 (9th Cir. 1981))); *In re Tracht Gut, LLC*, 836 F.3d 1146, 1155 n.4 (9th Cir. 2016) ("[U]ndue delay alone cannot serve as the basis for the denial of leave to amend." (citing *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999))); *Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1118 ("[T]his litigation has been ongoing for several years, [but] '[t]he mere fact that an amendment is offered late in the case . . . is not enough to bar it.'" (quoting *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981))). Consequently, Dillon's motion for leave to amend turns primarily on whether Legacy has met its burden of demonstrating prejudice. *See Eminence Cap., LLC*, 316

F.3d at 1052 ("[The] party opposing amendment bears the burden of showing prejudice[.]")
(simplified).

Legacy argues that Dillon's counsel's "assertion that 'there is no substantial or undue
prejudice' . . . is sorely mistaken and wholly disregards the significant time and resources Legacy
has expended [attempting] to (1) streamline, not expand, the matters at issue . . . ; and (2) help
[Dillon's] counsel draft an appropriate pleading that reflects the claims being asserted." (Def.'s
Resp. at 9.) Legacy also argues that it is "unreasonable at best" for Dillon's counsel to request
that the Court "ignore" Legacy's "apparently futile" efforts, especially when Dillon's counsel
has "engaged in similar conduct in numerous matters." (*Id.*) In support of this argument and
throughout its papers, Legacy highlights the district court's decision to sanction Dillon's counsel
in *Matthews v. Legacy Health*, No. 6:24-cv-00592-MC, 2024 WL 5225190, at *1-2 (D. Or. Dec.
26, 2024). (*See* Def.'s Resp. at 3-6, 9, invoking the proceedings in *Matthews*; Healy Decl. ¶ 4,
same).

The Court recognizes and appreciates whenever parties meaningfully confer and attempt
to avoid unnecessary motion practice and other expenditures of time and resources. Legacy's
counsel's efforts in particular have not gone unnoticed, as they have diligently pursued these
ends in this case and related matters and remained patient and professional while doing so. The
Court also recognizes *Matthews*' relevance to the facts and timeline that Legacy's counsel
describes in her declaration. (*See* Def.'s Resp. at 5, describing what "ostensibly" occurred given
the timing of the parties' conferral in *Matthews* regarding a sanctions motion and Dillon's
counsel's subsequent decision to propose further revisions to the first amended complaint, citing
Healy Decl. ¶ 4.)

///

At the same time, however, the Court remains mindful that it "should examine each case on its facts and determine the propriety of granting leave to amend on that basis." *Bollinger v. Starbucks Corp.*, No. 1:24-cv-00303-JLT-SAB, 2025 WL 808333, at *1 (E.D. Cal. Mar. 13, 2025) (quoting *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1175 (E.D. Cal. 2013)). The facts in this case and *Matthews* are similar but differ in notable respects. For example, Dillon has not attempted to revive any claim that the Court previously dismissed, nor has the Court unilaterally granted (and Dillon passed on) a limited period in which to amend. *Cf. Matthews v. Legacy Health*, No. 6:24-cv-00592-MC, 2024 WL 5225190, at *1-2 (D. Or. Dec. 26, 2024) (noting that the district court granted the defendant's motion and dismissed the plaintiff's new theories under federal and state law with and without prejudice, respectively, the plaintiff did not attempt to cure, and following the district court's Rule 16 conference and adoption of the parties' proposed Rule 26 agreement, which included a "renewed opportunity [for the] [p]laintiff to file a limited amended complaint," i.e., a pleading "removing . . . several claims" that the district court previously dismissed, the plaintiff filed an amendment that exceeded the parties' Rule 26 agreement and the district court's order dismissing her claims); (Healy Decl. ¶ 4, noting that the "improper" pleading in *Matthews* "continued to allege dismissed claims").

Also noteworthy is the scope and terms of the agreement that Legacy's counsel describes. Legacy's counsel states that Dillon's "counsel agreed to file an amended complaint in this case to voluntarily withdraw all claims except for [Dillon's] failure to accommodate claims," and did not "mention[] that [Dillon] may bring a disability discrimination claim" until the December 20, 2024 amended pleading deadline. (Healy Decl. ¶¶ 2, 10; *see also id.* Ex. 5 at 1, advising of Dillon's counsel's belief that his client had ADA and religious discrimination claims, "so [he]

intended to amend the complaint to assert that claim," and that Legacy's counsel responded that

he was unable to agree to Dillon's counsel's proposal because the parties had "never [previously]

discussed any claims other than the failure to accommodate claim"). By comparison, Legacy

argues in its response that Dillon's counsel "did the opposite" of what he "specifically agreed to

[do:] *dismiss* claims, not add them[.]" (Def.'s Resp. at 8, citing Joint Mot. Extension Time at 1-2,

ECF No. 6.)

   Dillon's counsel, however, initially dismissed three of the four relevant theories that he

listed under Dillon's Title VII and ORS § 659A.030 claims, both of which focused (and continue

to focus) on Dillon's allegation that Legacy discriminated against her by failing to accommodate

her request for a religious exemption. (*Compare* Compl. ¶¶ 25(1)-(5), 32(1)-(5), listing statutory

violations and theories for "wrongful termination," "wrongful reduction in pay," "retaliation,"

"failure to provide reasonable accommodation," and "company-wide, or systemic, discriminatory

pattern or practice," *with* First Am. Compl. ¶¶ 26(1)-(2), 33(1)-(2), alleging only the wrongful

termination and failure to accommodate theories). Dillon's counsel also eventually proposed

dismissing the remaining wrongful termination theory and her religious discrimination claim

under ORS § 659A.030. (*Cf.* Healy ¶ 2, declaring that "[Dillon's] counsel agreed to file an

amended complaint in this case to voluntarily withdraw all claims except for her failure to

accommodate claims"; *see also* Joint Mot. Extension Time at 1, informing the Court that

Dillon's counsel had "agreed to file an [a]mended [c]omplaint and voluntarily dismiss several

claims").

   Although Dillon's counsel may have delayed in mentioning and proposing Dillon's

addition of a disability discrimination claim under the ADA, nothing in Legacy's evidence (as

opposed to argument) suggests that Dillon's counsel agreed that he could never add or seek to

add another claim against Legacy. (*Cf.* Healy ¶ 10, "Before the December 20[, 2024] email, [Dillon's] counsel never mentioned that [Dillon] may bring a disability discrimination claim."; *id.* Ex. 2 at 1-2, December 5, 2024, challenging "reference[s]" to Dillon's medical exemption request and "purported inability to receive a COVID-19 vaccine for medical reasons" and whether these "reference[s]" "pertain[ed]" to Dillon's "failure to accommodate claim . . . or any of the dismissed claims"; *id.* Ex. 3 at 2, December 9, 2024, flagging and reserving Legacy's right to assert "all arguments to dispute [Dillon's] entitlement to discovery concerning allegations that are not relevant to [Dillon's] remaining failure to accommodate claims").

Also significant is that nothing in Legacy's evidence suggests that Dillon's counsel ever agreed to waive or relinquish the "right" to amend that Rule 15 confers upon all parties, including Dillon. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1007 (9th Cir. 2015) ("[The Ninth Circuit] previously ha[s] considered the phrase matter of course as consonant with 'as of right,' implying, if not expressly declaring, that Rule 15 confers a 'right' to amend upon parties. . . . [The Ninth Circuit] routinely ha[s] viewed Rule 15(a)(1)'s ability to amend as a right, one which is exhausted or limited only by the restrictions set forth in the Rule itself.") (simplified).

With respect to this "right" under Rule 15, Legacy argues that Dillon's counsel "bypassed numerous opportunities" and makes a "belated attempt" to amend, and as a consequence, the Court's discretion to deny Dillon leave to amend is "particularly broad." (Def.'s Resp. at 7-8) (simplified). Legacy also argues that Dillon had twenty-one days to amend "as a matter of course under Rule 15, but she neglected to do so," Dillon's counsel's "could have notified Legacy of [Dillon's] disability discrimination claim during the parties' multiple conferrals about [Dillon's] [c]omplaint[] or included" such a claim in one of his pre-December 20 proposals, and Dillon's

counsel's "explanation for the after-the-fact attempt to amend . . . is flatly unsatisfactory." (*Id.* at 8.)

The Court does not agree with Legacy's application of Rule 15 to the facts of this case. Although Dillon's counsel might have raised the potential ADA claim earlier in this litigation, counsel still raised the claim within five months of filing the case and sixty days of Legacy appearing and jointly moving for an extension of time, and included many of the underlying factual allegations in Dillon's original complaint. (*See* Compl. at 1, 3-4, 6, listing the relevant allegations and July 19, 2024 filing date; Return Serv. at 1, ECF No. 5, noting that Dillon served Legacy on October 3, 2024, making its responsive pleading due by October 24, 2024; Joint Mot. Extension Time at 2, demonstrating that the parties jointly moved for an extension on October 24, 2024; Healy Decl. ¶ 10, identifying December 20, 2024 as the date on which Legacy received notice of Dillon's intent to assert an ADA disability discrimination claim). Given these facts, the Court concludes that Dillon's counsel's delayed proposal of Dillon's ADA claim was not sufficient to bar it. *See Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1118 ("Although this litigation has been ongoing for several years, '[t]he mere fact that an amendment is offered late in the case . . . is not enough to bar it." (quoting *Webb*, 655 F.2d at 980).

The procedural history upon which Legacy relies also fails adequately to support that Dillon "somehow exhausted [her] one matter of course of amendment." *Ramirez*, 806 F.3d at 1007. "Since 2009, a plaintiff has the right to amend within twenty-one days of service of the complaint ([Rule] 15(a)(1)(A)), *or* within twenty-one days of service of a responsive pleading or service of a motion under Rule 12(b), (e), or (f), whichever comes first ([Rule] 15(a)(1)(B))." *Id.* at 1008 (emphasis added). For example, and relevant here, a plaintiff may "file his first amended complaint with consent from the opposing party, which satisfies Rule 15(a)(2)," and "thereafter

utilize his one matter of course amendment under [Rule] 15(a)(1), so long as he files it timely." *Id.* at 1007.

   To date, Legacy has not served a responsive pleading or any motion under Rule 12(b), (e), or (f), because of its conferral efforts and the manner in which the parties' ongoing dispute unfolded. Absent a responsive pleading, Rule 12(b), (e), or (f) motion, or agreement of which the Court is unaware, however, Dillon never "exhausted [her] one matter of course amendment."[7] *Ramirez*, 806 F.3d at 1007. The parallels between this case and *Ramirez* support that conclusion. *See id.* at 1004, 1007-08 ("[T]he [p]laintiff's first amendment was accomplished pursuant to a stipulation between the parties [regarding the dismissal of certain defendants]. This particular amendment complied with Rule 15(a)(2) as an 'other amendment' because it was filed with 'the opposing party's written consent.' It is arguable that this amendment was also filed with the 'court's leave,'. . . an alternative method of complying with Rule 15(a)(2). . . . The [p]laintiff's [Rule] 15(a)(2) amendment, filed first in time, cannot be construed as a waiver or exhaustion of his automatic right to amend under [Rule] 15(a)(1), so long as that amendment was timely.") (simplified).

   At best, a party could argue (but Legacy has not argued or asked the Court to consider) that a plaintiff waives her one matter of course amendment by inviting a court to review her proposed amendments. *See Daker v. Comm'r, Ga. Dep't of Corrs.*, 850 F. App'x 731, 733 (11th

---

[7] During oral argument, Legacy's counsel argued that Dillon did not file her amended complaint with Legacy's written consent and emphasized that Legacy did not receive an opportunity to review the amended complaint to confirm that it aligned with her understanding of the parties' agreement. Similar to *Ramirez*, however, Dillon's amended complaint was accomplished pursuant to a joint stipulation, which, like the record and hearing arguments, makes no mention of an explicit agreement never to add or seek to add another claim. (*See* Joint Mot. Extension Time at 1-2.) Thus, the Court finds that *Ramirez* provides useful guidance but also notes that even if that was not the case, it would grant leave to amend for the other reasons explained herein.

Cir. 2021) ("A district court does not abuse its discretion by ruling on a motion to amend even if the plaintiff had the right to amend his complaint as a matter of course because, by filing a motion to amend, the plaintiff 'waive[s] the right to amend as a matter of course and . . . invite[s] the [d]istrict [c]ourt to review [his] proposed amendments.'" (quoting *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869-70 (11th Cir. 2010) (per curiam))); *but cf. Ramirez*, 806 F.3d at 1007 ("[I]t is clear that [the Ninth Circuit] routinely ha[s] viewed Rule 15(a)(1)'s ability to amend as a right, one which is exhausted or limited only by the restrictions set forth in the Rule itself.").

Even if Dillon could waive (or did waive) the "automatic right" that Rule 15 conferred upon her and only Rule 15's restrictions may "exhaust[] or limit[]," *Ramirez*, 806 F.3d at 1008, the Court is unable to conclude that Legacy has satisfied its burden of demonstrating prejudice, or that there is strong evidence of prejudice and undue delay. After all, Legacy received notice of Dillon's proposed ADA claim within two months of its initial appearance and five months of Dillon's filing of the original complaint. Legacy also presents no arguments or evidence on futility of amendment or Dillon's bad faith or dilatory motive. Under these circumstances, the Court concludes that Rule 15(a)'s presumption remains in favor of granting leave to amend. *See Eminence Cap., LLC*, 316 F.3d at 1052 ("Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend.").

The primary case upon which Legacy relies does not support a contrary result. Unlike the situation before this Court, the plaintiff in *Kittel* sought (and the district denied) a request for a "third chance to amend" because it "would have been unduly prejudicial." 943 F. App'x at 56. The district court's discretion to deny leave to amend in *Kittel* was also "particularly broad"

under the circumstances presented. *See id.* ("[The Ninth Circuit] ha[s] noted that the district court's discretion is particularly broad where the plaintiff has bypassed other opportunities to amend." (quoting *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 677 (9th Cir. 1993))). This case is distinguishable. *Cf. Westlands*, 10 F.3d at 677 (finding that the district court did not abuse its discretion in denying leave to amend because the "appellants filed no motion to amend their complaint and gave no indication of a desire to do so until after the district court rendered its decision").

For all of these reasons, the Court exercises its discretion to grant Dillon's motion for leave to amend. *See Herring Networks, Inc.*, 8 F.4th at 1160 (noting that the Ninth Circuit has stated that Rule 15's "policy is to be applied with extreme liberality" (quoting *Owens*, 244 F.3d at 712)).

## CONCLUSION

For the reasons stated, the Court GRANTS Dillon's motion for leave to amend (ECF No. 11). Dillon shall file her second amended complaint by May 1, 2025.

**IT IS SO ORDERED.**

DATED this 24th day of April, 2025.

*[signature: Stacie F. Beckerman]*

HON. STACIE F. BECKERMAN
United States Magistrate Judge